**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ALASKA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. EVELYN SIZEMORE, *Defendant.* | ) ) ) ) ) ) ) ) | No. 3:24-cr-00052-VMK-MMS<br>Judge Virginia M. Kendall |

## MEMORANDUM OPINION & ORDER

In December 2025, the Court sentenced Evelyn Sizemore to 34 months' imprisonment and three years of supervised release for possession of 425.6 grams of methamphetamine with intent to distribute for the purpose of funding her own drug addiction. (Dkt. 71 at 2–3). Sizemore now moves for compassionate release under 18 U.S.C. § 3582(c)(1). (Dkt. 71). For the reasons outlined below, the Court denies Sizemore's Motion [71].

## BACKGROUND

On May 23, 2024, Sizemore was charged with one count of possession of a controlled substance with intent to distribute. (Dkt. 71 at 2). On June 5, 2025, Sizemore pleaded guilty to the charge. (*Id.*) On the occasion for which this charge was brought, Sizemore possessed 425.6 grams of methamphetamine. (*Id.* at 3). Sizemore admits to selling controlled substances in order to fund her own drug addiction, (*id.*), though the Government maintains the quantity of drugs was far too large to be for personal consumption alone. (Dkt. 75 at 12). (The weight of the substance she possessed carried a 10-year mandatory minimum term of imprisonment, though Sizemore was not charged with the mandatory minimum offense.) (*Id.* at 13). At the time of the crime, Sizemore was found driving at a high rate of speed and swerving while under the influence of a controlled

substance. (Dkt. 71 at 3). In addition, Sizemore's cell phone records show that she had been engaged in the distribution of controlled substances since October 2022. (Dkt. 73 at 1) (sealed).

At sentencing for the one-count plea, after considering the § 3553(a) factors, this Court sentenced Sizemore to 34 months' imprisonment and three years' supervised release based on mitigating factors such as Sizemore's age and health, as well as to avoid unwarranted sentencing disparities among defendants. (Dkt. 71 at 2; Dkt. 64 at 3). The Government sought a sentence below the guideline range and the Court's sentencing was below the Government's recommendation. (Dkt. 64 at 2). On February 24, 2026, Sizemore self-surrendered to the Bureau of Prisons ("BOP") and is now serving her sentence. (Dkt. 73 at 2). Approximately two months later, on April 30, 2026, Sizemore filed the present compassionate release motion. (Dkt. 71).

## **LEGAL STANDARD**

Generally, a federal court "may not modify a term of imprisonment once it has been imposed," 18 U.S.C. § 3582(c); but Congress has provided that a court can order a prisoner's early release if "extraordinary and compelling reasons" warrant a sentence reduction. § 3582(c)(1)(A)(i). Under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, a court may review a motion under the statute after one of two conditions is met: 1) the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons ("BOP") to bring a motion on the defendant's behalf, or 2) the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility. § 3582(c)(1)(A).

The Ninth Circuit conceives of the sentence reduction assessment as "controlled by three substantive considerations." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022). First, the defendant must demonstrate the existence of "'extraordinary and compelling reasons' [that] warrant a sentence reduction." *Id.* (quoting § 3582(c)(1)(A)(i)). Second, the Court will evaluate

whether a sentence reduction "would be 'consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* (emphasis in original). Third, the Court "must consider and weigh the factors set forth in 18 U.S.C. § 3553(a) to decide whether the requested sentence reduction is warranted 'under the particular circumstances of the case.'" *Id.* (quoting *Dillon v. United States*, 560 U.S. 817, 827 (2010)). The defendant bears the burden of establishing eligibility for compassionate release. *Wright*, 46 F.4th at 951.

## DISCUSSION

### I. Administrative Remedies Requirement

Initial filings on this motion teed up a potential issue with § 3582(c)(1)(A)'s administrative remedies requirement. On March 23, this Court granted Sizemore's request for counsel to assist in filing a motion for compassionate release. (Dkt. 69). Sizemore represented to her counsel that she had filed the requisite motion for compassionate release with the BOP on March 31; subsequently, after no response from prison officials, Sizemore's attorney filed the present motion on April 30. (Dkt. 71 at 2). The Government, however, originally contended that Sizemore had not exhausted her administrative remedies as evidenced by her failure to attach a copy of her request for early release to BOP in her motion, and thus demanded a denial under the terms of the statute. (Dkt. 75 at 4). In support, the Government provided an email from a BOP attorney noting that, as of May 14, there was no documented internal request from Sizemore in the BOP database. (Dkt. 75-1 at 1). Given the conflict, the Court entered orders noting that it was ultimately Sizemore's duty to establish compliance with the statutory requirements, but that given the conflicting evidence, the Government should work with Sizemore's counsel to assess the issue. (Dkt. 77, 79).

After further review, the Assistant U.S. Attorney on the case informed the defense attorney that BOP had not yet uploaded the request for compassionate release to its database for review but

confirmed that it was being processed. (Dkt. 80 at 1). As of June 17, the Government indicated it was still awaiting copy of this documentation from BOP. (*Id.*) Sizemore's attorney also provided two documents, the first of which is a copy of Sizemore's internal BOP compassionate release request, which was actually dated April 1, 2026. (*Id.* at 3). Second, and more crucially, Sizemore's attorney provided an email dated May 19, 2026, from Sizemore's BOP case manager to Sizemore after Sizemore followed up about her request for compassionate release. (*Id.* at 5). The case manager told Sizemore that the paperwork "has been signed by the Warden and I will let you know when there is an update." (*Id.*) It is unclear why, if the paperwork had been signed by May 19, that BOP was still unable to provide the Assistant U.S. Attorney with this documentation as of June 17.

Section 3582(c)(1)(A)'s administrative remedies requirement is a mandatory claim-processing rule that federal courts must enforce if invoked. *United States v. Keller*, 2 F.4th 1278, 1282 (9th Cir. 2021). Under § 3582(c)(1)(A), once a defendant takes the preliminary step of submitting a compassionate release request to the warden, a defendant may file a motion for compassionate release in the district court after, in relevant part, "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." This means that a defendant must exhaust his administrative remedies prior to filing a motion for compassionate release with the Court. *Keller*, 2 F.4th at 1282–83. As noted above, this action was filed on April 30, 2026.

Sizemore's attorney sought to specifically account for this 30-day window when filing the motion on April 30—one month after Sizemore informed him that she filed with BOP on March 31, 2026. (Dkt. 71 at 2). The fact that the actual paperwork possesses an April 1 date, though, should inform a future best practice of waiting for more confirmation prior to filing to ensure

compliance with the statute, which requires "the lapse of 30 days from the *receipt* of such a request by the warden of the defendant's facility." § 3582(c)(1)(A) (emphasis added).

Sizemore's early filing might demand a denial under § 3582(c)(1)(A) under the strictest and most technical interpretation. This case, however, contains additional considerations given what appears to be a flaw in BOP's own processing procedures. As noted above, more than six weeks after the date of Sizemore's apparent filing with BOP, she received the May 19 email indicating that the paperwork had been signed by the Warden. Yet nearly a month after that, BOP could still not provide the Government or defense counsel with documentation of the request for compassionate release, which had still not been uploaded to the BOP database for review. Further, the Assistant U.S. Attorney represented to defense counsel that BOP indicated the request had not yet been reviewed by the warden (Dkt. 80 at 1), a seeming conflict with the message in the May 19 email. (*Id.* at 5).

The BOP's handling of the issue appears troublesome, especially in light of policy motivations behind the First Step Act of 2018 in the first place. As the Ninth Circuit has highlighted, the First Step Act extended the right to file compassionate release motions to defendants themselves in part because BOP's own process was "marked by delays and mismanagement." *United States v. Wright*, 46 F.4th 938, 945 (9th Cir. 2022) (citing *United States v. Brooker*, 976 F.3d 228, 230–32 (2d Cir. 2020) (observing that out of 208 prisoners approved for compassionate release, 13% died awaiting a final decision by the BOP Director)). It would be at odds with this legislative evolution if BOP were allowed to hamstring a defendant's ability to file

in federal court by not documenting the receipt of an internal BOP motion for more than 2.5 months.

The Ninth Circuit has expressly held that a court may not "excuse a defendant's failure to satisfy [the 30-day] requirement over the government's timely objection." *Keller*, 2 F.4th at 1282. In that case, though, Keller filed an administrative request for a sentence reduction with the warden of his facility, then, while awaiting a response, filed his motion in the district court just eight days later. *Id.* at 1280–81. Twelve days after the initial administrative filing, the warden denied Keller's administrative request. The Ninth Circuit found that the district court erred in addressing the merits of the motion before the defendant had exhausted his administrative remedies, holding that the purpose of the rule was the "promot[ion of] the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Id.* at 1283.

Unlike in *Keller*, though, Sizemore's delay does not appear to amount to "defendant's failure," but rather failings within the documentation system at BOP now stretching multiple months. *Id.* at 1282. Further, the *Keller* Court interpreted the statutory requirement to permit a court to consider a § 3582(c)(1)(A) motion once "30 days have elapsed since the "warden of the inmate's facility received a compassionate-release request from the inmate," a milestone crossed pursuant to the May 19 confirmation of the warden's receipt, if not the April 1 filing date on the form. *Id.* at 1281. While some delays are unavoidable, BOP would do well to ensure its internal processes more cleanly facilitate a defendant's right to file under the statute. Sizemore's counsel, likewise, is on notice that premature filing in any other circumstance will earn his clients a denial of their motion under § 3582(c)(1)(A). Because Sizemore has complied with the 30-day

administrative remedies requirement under the statute, the Court will proceed to the question of whether to grant the Motion on the merits. *Keller*, 2 F.4th at 1281; *Wright*, 46 F.4th at 945.

II. **Extraordinary and Compelling Reasons**

Congress did not define what amounts to "extraordinary and compelling reasons" under the statute beyond directing that the defendant's rehabilitation alone was insufficient. *United States v. Bryant*, 144 F.4th 1119, 1123 (9th Cir. 2025) (citing 28 U.S.C. § 994(t)). Rather, lawmakers directed the U.S. Sentencing Commission to provide courts with applicable criteria; since 2023, these criteria have been binding on courts considering motions brought directly by defendants in addition to those brought by BOP. *Id.* at 1123–24. Sizemore's motion makes the outdated argument that the Policy Statement is not binding on this Court because the defendant, and not BOP, has brought the action. (Dkt. 71 at 6) (citing *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam)). As the Ninth Circuit has made clear, however, *Aruda* "has [] been superseded to the extent that it sets out a different rule for motions filed by defendants after the effective date of the 2023 revisions." *Bryant*, 144 F.4th at 1124 n.1.

The Sentencing Commission's Policy Statement on Compassionate Release provides that the following may constitute extraordinary and compelling reasons: 1) severe medical circumstances such as the defendant's terminal illness, 2) significant physical or mental decline because of the aging process, 3) the death or incapacitation of the primary caregiver of a defendant's child (or spouse when the defendant would be the only available caregiver), 4) whether the defendant was subject to abuse in custody, 5) whether the defendant served at least 10 years of an unusually long sentence that would amount to a gross disparity in light of legislative

developments on the sentenced crime, or 6) "other reasons [] similar in gravity" to the aforementioned examples. U.S.S.G. § 1B1.13(b)(1-6).

Sizemore makes two arguments in attempt to establish an extraordinary and compelling reason that would justify the Court's reduction of her sentence. Sizemore's motion for compassionate release does not ground its arguments in the specific examples of the Policy Statement (presumably because of its errant assumption that the list is non-binding), but generally speaking, it focuses on the health and age of both the defendant herself and her husband, Louis Sizemore (hereinafter "Mr. Sizemore" for clarity). (Dkt. 71). Because Sizemore is not yet 65 and has not served at least 10 years or 75 percent of her imprisonment, she is ineligible under § 1B1.13(b)(2). Thus, the Court will evaluate the motion with regard to Sizemore's own health under § 1B1.13(b)(1), which evaluates the medical circumstances of the defendant, and look to the family circumstances provision at § 1B1.13(b)(3) regarding Mr. Sizemore's health.

Relevant here, the Policy Statement provides that "suffering from a serious physical or medical condition. . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover" and "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death" are "extraordinary and compelling reasons" to warrant a defendant's early release. § 1B1.13(b)(1)(B)-(C). Likewise, "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner" is a valid justification for early release. § 1B1.13(b)(3)(B).

The health issues of Sizemore and her husband are not extraordinary and compelling reasons under the Sentencing Guidelines and applicable Policy Statements. First, Sizemore argues

that she suffers from serious health issues which, along with her self-declared "advanced age," warrant compassionate release. (Dkt. 71 at 6). Sizemore suffers from multiple serious medical conditions and mental health issues which require regular medical treatment and oversight. (*Id.*) She "reported undergoing surgery and radiation therapy" for cancer in 2023 and 2024, has "an oval mass measuring 12 millimeters in her left breast" for which she reports no action has yet been taken despite the report indicating it was discovered two years prior to her sentencing, suffers "physical limitations" due to carpal tunnel syndrome, migraines, sleep apnea, cervical spondylosis, and high blood pressure. (Dkt. 71 at 7–8; *see also* Dkt. 71-1). As for her struggles with mental health, Sizemore has been diagnosed with Post-Traumatic Stress Disorder (PTSD), Attention Deficient Hyperactivity Disorder, Generalized Anxiety Disorder, and depression. (Dkt. 71 at 8). Broadly speaking, this information was available at Sizemore's December 2025 sentencing and considered in mitigation on the record. There is no indication in her motion about how these conditions impact her ability to care for herself within the correctional facility.

While Sizemore is afflicted by numerous physical conditions and has faced her fair share of struggles with mental health, she is also "classified as a Care Level 2 inmate" meaning she is a "stable patient who require[s] clinical evaluations monthly to every 6 months" (internal quotations omitted). (Dkt. 73 at 2) (Dkt. 75 at 6). As such, a medical professional has deemed her afflictions manageable "through routine, regularly scheduled appointments with clinicians for monitoring." (Dkt. 73 at 2; *see also* Dkt. 75 at 6). "Chronic but manageable medical conditions alone do not constitute extraordinary and compelling circumstances." *See, e.g.*, *United States v. Miller*, 2021 WL 2711728 *1, *4 (N.D. Cal. July 1, 2021)). Furthermore, Sizemore has failed to provide the court with medical evidence identifying that she requires specific medical care that she has failed to receive while incarcerated. *See United States v. Moreno*, 2023 WL 10352015, at *3 (D. Alaska

Dec. 29, 2023) (denying compassionate release where defendant was in less than ideal health, but did not show that he was unable to provide self-care, that his facility failed to provide him the care he needs, or that he suffered from a type of condition serious enough to warrant early release). As to Sizemore's battle with cancer, her records do not indicate there to be follow-up treatment that she cannot obtain while incarcerated. (Dkt. 75 at 5; Dkt. 71-1 at 2, 3). Indeed, Sizemore has even refused certain medical treatment. (Dkt. 75 at 6; Dkt. 76-2 at 32, 42). Therefore, Sizemore has failed to meet her burden in establishing that her medical conditions are extraordinary and compelling as defined by the Sentencing Commission.

Next, Sizemore argues that she needs to serve as a caregiver to her ailing husband. (Dkt. 71 at 1). Louis Sizemore, the defendant's husband, suffered a serious heart attack in 2019 from which irreparable damage was done to his heart. (Dkt. 71 at 9; Dkt. 71-2 at 2–5). Mr. Sizemore's doctors "inserted stents in the veins around his heart and also had to emplace a defibrillator within his chest," and he now has low blood pressure and a weak heart as complications of the attack. (Dkt. 71 at 9). In addition, he has a history of hypertension, hyperlipidemia (high levels of fat in the blood cells), chronic systolic heart failure, and "has been diagnosed with Multilevel degenerative disc disease with endplate changes." (*Id.*; Dkt. 71-2 at 8). Mr. Sizemore sustained a bicep injury for which he needed surgery and which now limits him from lifting more than 10 pounds with that arm. (Dkt. 71 at 10). Consequently, Mr. Sizemore has stated he has experienced great stress, worry, anxiety, and fear for which he has been treated by a psychiatrist. (*Id.*) As a result of his wife's incarceration, Mr. Sizemore reports becoming

increasingly stressed about operating the family business—an event-planning company owned by him and his wife—due to his various conditions. (*Id.* at 10–11).

Despite Sizemore's argument that her husband requires a caregiver, Mr. Sizemore told the U.S. Probation Office that "his general health condition [is] 'alright,' and explained he is continuing to work full-time as an event organizer and is capable of meeting his daily personal care needs." (Dkt. 73 at 2). Furthermore, in an affidavit dated April 22, 2026, Mr. Sizemore said that "no one is available to serve as a caregiver to me except my wife." (Dkt. 71-6 at 2). In a report filed on April 30, 2026, however, the U.S. Probation Office indicated that their investigation revealed "multiple individuals are available and actively providing routine assistance to Mr. Sizemore in connection with a limited number of tasks for which he does require assistance." (Dkt. 73 at 4). While Mr. Sizemore undoubtedly experiences numerous conditions which make his daily tasks more difficult, his wife fails to show that he is incapacitated and in need of her help. *See, e.g.*, *United States v. Butts*, 2024 WL 2891472, at *3 (D. Alaska Jun. 10, 2024) (denying compassionate release where defendant's mother had serious health issues that nonetheless did not render her incapacitated in her role as defendant's children's guardian). Therefore, the Court does not find Mr. Sizemore to be incapacitated, nor in a circumstance where his wife is the only available caregiver, making this argument neither extraordinary nor compelling. Accordingly, Sizemore has not met her burden under the statute.

## III. Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons for a sentence reduction, the § 3553(a) factors do not favor a modification of the imposed term of imprisonment. Already, Sizemore's medical conditions and those of her husband were considered by the Court as mitigating factors in its sentence. Accordingly, Sizemore received a sentence of 34 months'

imprisonment with three years' supervised release, below the guideline range for the charged offense. (Dkt. 64 at 2-3). Section 3553 demands a sentence "sufficient, but not greater than necessary." Sizemore was involved in the distribution of a serious amount of illicit substances. Sizemore transported 425.6 grams of methamphetamine, was found driving erratically while under the influence at the time of her arrest for the current matter, and has a history of drug dealing. (Dkt. 71 at 3; Dkt. 75 at 12; Dkt. 73 at 3). Records show that her behavior was not a one-time incident and therefore, there is a possibility of recidivism which puts the public and others in danger. (Dkt. 75 at 12; Dkt. 73 at 1). Although Sizemore may be somewhat remorseful for her conduct and may be taking steps towards rehabilitation, she has simultaneously shirked responsibility on other ways, apparently representing to her counselor that the substances found in her possession were determined to be "baking soda or baking powder," (Dkt. 71-4 at 3), rather than the 400 grams of pure methamphetamine she admitted to possessing. (Dkt. 75 at 12).

Underscoring the above point: Sizemore has, at this point, served only a few months of her already below-guidelines sentence. It would require extraordinary circumstances to determine that such a reduction would be "sufficient" under the factors. That high bar has not been met here.

**CONCLUSION**

For the foregoing reasons, the Court denies Sizemore's Motion for Compassionate Release [71].

Virginia M. Kendall
United States District Judge

Date: August 24, 2026